UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARATHON CRE 2018-FL1 ISSUER, LTD.,

                                    Plaintiff,

                    -v.-

257-263 W 34TH STREET LLC; SORABH
MAHESHWARI; JUSTIN EHRLICH; CHAIM
LEBOWITZ; ISSAC LAUFER; SUKENIK, SEGAL &
GRAFF, P.C.; E&W WHOLESALE ELECTRICAL INC.;
and JOHN DOES 1-100,

                                    Defendants.

---

22 Civ. 1991 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Marathon CRE 2018-FL1 Issuer, Ltd. ("Plaintiff") commenced this
commercial foreclosure action in New York Supreme Court against Defendant
257-263 W 34th Street LLC ("Borrower") and Defendants Sorabh Maheshwari,
Justin Erlich, Chaim Lebowitz, and Issac Laufer (the "Guarantor Defendants,"
and together with Borrower, "Defendants"). Following six months of
proceedings in state court, Defendants removed the case to this Court
pursuant to its diversity jurisdiction. However, months prior to that removal,
Plaintiff had assigned its interests in various mortgages and accompanying
security documents to a non-diverse entity. Indeed, Plaintiff's motion to
substitute that entity as the plaintiff in the state case was still pending at the
time of removal. However intriguing the merits of this case may be, and
despite two other subsequently-filed motions by non-parties to this action, the
Court finds that it lacks subject matter jurisdiction, and accordingly grants

Plaintiff's motion to amend the Complaint and to remand this action to New York Supreme Court.

**BACKGROUND**[1]

**A.      The Underlying Financing Arrangement**

Plaintiff brought this action in order to foreclose on three commercial mortgages encumbering property located at 257-263 West 34th Street, New York, New York.  (Compl. ¶ 1).  By way of background, in June 2019, Borrower obtained three loans from non-party Marathon Real Estate Debt Fund, L.P. ("Marathon"), in an aggregate amount of $52,000,000 to fund the construction of a real estate development project at 263 West 34th Street (the "Property") in New York, New York.  (*Id.* ¶ 14).  To that end, on June 17, 2019, Marathon and Borrower entered into a senior loan agreement, whereby Marathon loaned Borrower an original principal amount of $40,096,500, to be used to pay off existing mortgages on the Property and pay certain development costs.  (*Id.* ¶¶ 15-16).  Alongside the senior loan agreement, Borrower executed a

---

[1]      The facts in this Opinion are drawn from the Complaint (Dkt. #1-1 ("Compl.")); the affidavit of Craig Thaler in support of Plaintiff's motion to amend and to remand and attached exhibits (Dkt. #23 ("Thaler Aff.")); the affidavit of Joseph Griffin in support of Plaintiff's motion to amend and to remand and attached exhibits (Dkt. #24 ("Griffin Aff.")); and the affidavit of Jed Weiss in support of Plaintiff's motion to amend and to remand and attached exhibits (Dkt. #25 ("Weiss Aff.")).  The Court sources additional material from the exhibits attached to Defendants' opposition to Plaintiff's motion to amend and to remand, and refers to those exhibits using the convention ("Def. Opp., Ex. []").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its motion to amend and to remand as "Pl. Br." (Dkt. #22); to Plaintiff's supplemental memorandum of law in support of its motion to amend and to remand as "Pl. Supp. Br." (Dkt. #48); to Defendants' memorandum of law in response to Plaintiff's motion to amend and to remand as "Def. Opp." (Dkt. #53); and to Plaintiff's reply memorandum of law in support of its motion to amend and to remand as "Pl. Reply" (Dkt. #54).

2

promissory note for this same amount that was secured by a senior mortgage. (*Id.* ¶¶ 17-18; collectively with the promissory note and loan agreement, the "Senior Loan Documents").  In addition to the Senior Loan Documents, Marathon and Borrower entered into a similar arrangement, whereby Marathon agreed to loan $6,908,500 to Borrower to pay certain costs and expenses associated with developing the Property; the parties executed a promissory note for this loan that was secured by another mortgage on the Property.  (*Id.* ¶¶ 20-23; collectively, the "Building Loan Documents").  Finally, Marathon and Borrower entered into a third loan agreement, whereby Marathon agreed to loan $4,995,000 to Borrower to pay other costs and expenses associated with the project.  (*Id.* ¶¶ 25-26).  The parties likewise executed a promissory note for this loan, which note was secured by still another mortgage on the Property. (*Id.* ¶¶ 27-28; collectively, the "Project Loan Documents").  The Court refers to these documents as the "Mortgage Loan Documents."

On June 24, 2019, Marathon assigned the Mortgage Loan Documents to a different entity, which then assigned its interest in the Property to Plaintiff. (Compl. ¶¶ 33-34).  As of the date of the Complaint — September 15, 2021 — Plaintiff represented that it was "owner and holder of the Mortgage Loans and all of the Mortgage Loan Documents, including, but not limited to, the Mortgages, the Notes[,]" as well as a guaranty executed by Marathon and certain guarantors.  (*Id.* ¶ 35).  The Mortgage Loan Documents impose certain repayment obligations on Borrower, and detail what constitutes an "Event of Default."  (*Id.* ¶¶ 36-38).  On June 24, 2021, Plaintiff served Borrower a notice

of default and acceleration and reservation of rights due to alleged events of default.  (*Id.* ¶¶ 39-41).  According to Plaintiff, the outstanding principal balance of the loans, as well as accrued and unpaid interest, is now immediately due and payable in full.  (*Id.* ¶ 41).  Plaintiff accordingly seeks to foreclose on the various loans.

**B.    The Filing of the Action in New York State Supreme Court and Its Removal**

Plaintiff commenced this foreclosure action in the Supreme Court of New York, New York County, on September 15, 2021.  (Dkt. #1 (Notice of Removal) ¶ 1; *see generally* Compl.).  In the Complaint, Plaintiff represents that it is "a company incorporated in the Cayman Islands … with an office located at One Bryant Park, 38th Floor, New York, New York 10036."  (Compl. ¶ 2). Defendants initially interpreted this representation to mean that "Plaintiff had New York domicile status," which if true would have vitiated diversity because Defendants were all New York citizens.  (Notice of Removal ¶¶ 3-4).  However, on March 9, 2022, Plaintiff filed an affidavit opposing Defendants' motion to dismiss in state court, clarifying that Plaintiff "does not have an office in New York or employees in New York."  (*Id.* ¶ 4; *id.*, Ex. B ¶ 4).  Plaintiff further explained that the New York address listed in the Complaint belongs to a separate entity — Marathon Asset Management, LP — which maintains an office in New York and manages Plaintiff's assets.  (*Id.*, Ex. B ¶ 4).  Defendants claim that following this clarification, they learned for the first time that Plaintiff's citizenship for diversity purposes is the Cayman Islands rather than

New York; with that new information, Defendants removed the case to this

Court on March 9, 2022.  (Notice of Removal ¶¶ 4-5).

**C.      The Parties' Motion Practice**

On March 13, 2022, the Guarantor Defendants filed a pre-motion letter

contemplating a motion to dismiss.  (Dkt. #11).  In that letter, the Guarantor

Defendants explained that they intended to file a motion to dismiss pursuant to

New York Business Corporation Law Section 1312(a), arguing that Plaintiff is a

foreign corporation doing business in New York without license to do so.  (*Id.* at

1-2).  Plaintiff filed a responsive letter on March 16, 2022, explaining that the

Court should "grant Plaintiff leave to amend the caption in this case to reflect

[the] current holder of the notes and mortgages, and upon amendment, remand

this case to [s]tate [c]ourt."  (Dkt. #16 at 1).  In that letter, Plaintiff explained

that it had assigned "the Mortgages and related loan documents" to 263 W

34th Street Lender, LLC ("Lender") on November 18, 2021, during the pendency

of the state action, and that it had previously attempted to amend the state

court case to reflect this assignment to Lender as the new plaintiff in interest.

(*Id.* at 2).  Prior to moving for summary judgment in state court, Plaintiff had

reached out to Defendants and requested that they stipulate to this proposed

amendment, but received no response.  (*Id.*).  In its letter to this Court, Plaintiff

argued that if the Court were to grant its proposed amendment, it would be

required to remand the case to state court, inasmuch as Lender is an LLC with

New York resident members and thus complete diversity would not exist among

the parties.  (*Id.*).

On March 24, 2022, the Court held a pre-motion conference.  During that conference, the Court explained that, as it relates to the issue of amendment and remand, "what matters to me is who is the holder [of the mortgages] at the time the notice of removal is filed."  (Dkt. #18 at 4:20-22).  Because the Court explained that it made sense to "address the issue of whether I have jurisdiction" before addressing any motion practice related to the merits of the case, the Court set a briefing schedule on Plaintiff's motion for leave to amend and to remand to state court.  (*Id.* at 12:18-20).

On April 22, 2022, Plaintiff filed its motion to amend the Complaint and to remand to state court and supporting papers.  (Dkt. #22-25).[2]  Following these submissions, Defendants filed a letter motion seeking unredacted copies of certain documents submitted by Plaintiff, including subscription agreements for Joseph Griffin and Craig Thaler, the New York-resident limited partners associated with Lender.  (Dkt. #26).  In particular, Defendants were interested in ascertaining the amounts both limited partners paid as part of the subscription agreements, in order to assess whether the "subscription agreements are collusive and in some way lacking in bona fides[.]"  (*Id.* at 1-2).  On April 29, 2022, Plaintiff filed a letter opposing Defendants' request for unredacted copies of the subscription agreements but agreeing to produce a redacted copy of the partnership agreement.  (Dkt. #31 at 1-2).  The Court resolved the parties' dispute on May 2, 2022, directing Plaintiff to file sealed

---

[2]      Plaintiff inadvertently did not file a notice of motion on April 22, 2022.  Instead, the Court granted Plaintiff leave to file such notice on April 27, 2022.  (Dkt. #29).  Plaintiff then filed its notice on April 28, 2022.  (Dkt. #30).

versions of the relevant exhibits without redactions, and to provide Defendants with a redacted version of the relevant partnership agreement.  (Dkt. #32). Thereafter, Plaintiff filed these documents under seal.  (Dkt. #36-37).

On May 10, 2022, Defendants filed a letter motion seeking jurisdictional discovery prior to submitting an opposition to Plaintiff's motion to amend and to remand.  (Dkt. #41).  On May 13, 2022, Plaintiff responded to Defendants' letter, and opposed Defendants' requested jurisdictional discovery.  (Dkt. #43). Thereafter, Defendants filed a reply letter, reiterating their arguments in support of jurisdictional discovery but contending more broadly that the case should not be remanded.  (Dkt. #45).  On May 23, 2022, the Court denied Defendants' request for jurisdictional discovery on two bases.  (Dkt. #47).  *First*, the Court explained that Defendants had "not identified in sufficient detail the additional discovery that they wish[ed] to conduct."  (*Id.* at 4).  And *second*, the Court noted that "the central issue is likely to be whether this case must be remanded because Plaintiff's assignee was an indispensable party at the time the case was removed to federal court."  (*Id.* (discussing *Freeport-McMoRan, Inc.*, v. *KN Energy, Inc.*, 498 U.S. 426 (1991))).  The Court then ordered Plaintiff to submit a supplemental response addressing the latter point by June 6, 2022; Defendants to submit their opposition brief by June 21, 2022; and Plaintiff to file a reply brief by July 5, 2022.  (*Id.*).

In accordance with this schedule, Plaintiff filed its supplemental brief on June 6, 2022.  (Dkt. #48).  On June 24, 2022, Defendants filed a letter asking for leave *nunc pro tunc* to file their opposition brief by June 29, 2022, due to an

administrative oversight. (Dkt. #50). Plaintiff opposed this extension. (Dkt. #51). The Court granted Defendants' request, while noting that there would be no further extensions of the briefing schedule. (Dkt. #52). Defendants then filed their opposition brief on June 29, 2022 (Dkt. #53), and Plaintiff filed its reply on July 13, 2022 (Dkt. #54).

As factually relevant to the motion to amend and remand, Plaintiff assigned the Mortgage Loan Documents to Lender on November 18, 2021. (Thaler Aff. ¶ 6; *see generally*, *id.*, Ex. B (assigning all Mortgage Loan Documents, including the Senior Loan, Building Loan, and Project Loan Documents)). Plaintiff avers that the "decision to assign the Mortgage Loans to Lender was purely for business reasons, and was not in any way taken to defeat diversity jurisdiction[.]" (Thaler Aff. ¶ 7). Indeed, Plaintiff explains that the assignment was done in conjunction with a commercial transaction related to a collateralized loan obligation ("CLO") issuance. (*Id.* ¶¶ 7-12 (detailing the transactions associated with the CLO redemption)). Lender was formed on November 9, 2021, and in connection with the assignment of the relevant loans to Lender, a new investment entity — MAM 263 W 34th Street Holdco, L.P. ("Holdco") — acquired one hundred percent of Lender's interests from other Marathon funds. (*Id.* ¶¶ 12-13).

Lender, a limited liability company, is now wholly owned by Holdco. (Thaler Aff. ¶¶ 15-18). Holdco, in turn, is a Delaware limited partnership with New York members, and accordingly Lender has New York members. (*Id.* ¶¶ 17-18; *see also id.*, Ex. D (Lender's Limited Liability Company Agreement

showing that Lender's only members are two Marathon funds), E (Assignment and Transfer Agreement between Marathon funds and Holdco transferring all interests in Lender to Holdco), G (Craig Thaler driver's license showing New York residence); Dkt. #36 at A-1 (Holdco subscription agreement showing Craig Thaler's subscription amount and listing address in New York); Dkt. #37 at A-1 (Holdco subscription agreement showing Joseph Griffin's subscription amount and listing address in New York); Griffin Aff. ¶¶ 2-3 (noting Joseph Griffin is a limited partner of Holdco and resides in New York); *id.*, Ex. B (Joseph Griffin driver's license showing New York residence)).   The relevant assignments of the Mortgage Loan Documents to Lender, transfer of interests in Lender from Marathon to Holdco, and subscription agreements for Holdco were effectuated months prior to Defendants removing this case to this Court.   Because Lender was the holder of the Mortgage Loan Documents at the time of removal, Plaintiff has submitted a proposed First Amended Complaint seeking to replace Plaintiff with Lender as the named plaintiff in this case.   (Weiss Aff., Ex. G (proposed First Amended Complaint)).   Plaintiff does not seek leave to make any other changes to the Complaint.

**D.    The Motions Brought by the Non-Parties**

Following the completion of briefing on Plaintiff's motion to amend and remand, non-party Cornell West 34 Holder LLC ("Debtor") filed a notice of bankruptcy on the docket of this case on August 4, 2022.   (Dkt. #56).   In this notice, Debtor explained that it is the owner of 15.03% of 257-263 W 34th Street JV LLC, which entity owns 100% of the equity in 257-263 W 34th Mezz

LLC, which entity owns 99.99% of 257-263 W 34th Street LLC, which entity owns the subject Property.  (*Id.*).  Following this submission, the Court ordered the parties to address the impact of the notice on this case, particularly as it related to whether the case must be stayed under the Bankruptcy Code.  (Dkt. #57).  On August 12, 2022, Debtor filed a letter in response to the Court's Order, explaining that it intended to file a motion to intervene in this case under Federal Rule of Civil Procedure 24, with an eye toward removing the action to bankruptcy court.  (Dkt. #59 at 1).  Debtor did not suggest that the automatic stay would be applicable in this case, but suggested that courts had applied the stay to certain cases involving non-debtors.  (*Id.* at 2).  The parties also submitted a joint letter on August 12, 2022, addressing the notice of bankruptcy.  (Dkt. #60).  Plaintiff argued that a stay was inappropriate because this case pertains to a non-debtor, and the Property is not a part of Debtor's bankruptcy estate.  (*Id.* at 1-2).  Defendants took no position on whether staying the case was appropriate.  (*Id.* at 3).  Plaintiff then filed another letter, reiterating its views.  (Dkt. #61).

Thereafter, Debtor filed a letter motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24(a)(2).  (Dkt. #63).  In this letter motion, Debtor argues it is entitled to intervene as of right because (i) Debtor timely moved to intervene; (ii) it has a substantial legal interest in the case insofar as it will seek to remove the case to bankruptcy court; (iii) intervention is necessary to protect its interests in a Chapter 11 restructuring; and (iv) the existing parties cannot protect Debtor's interests, because Defendants in this

case are "subject to certain restrictions relating to a Chapter 11 filing." (*Id.* at 2-4). On September 9, 2022, Plaintiff filed a memorandum of law in opposition to Debtor's motion to intervene, arguing that Debtor does not satisfy any of the relevant factors in favor of intervention under Rule 24. (Dkt. #69).

Separately, on August 12, 2022, Leslie Feifer ("Receiver") filed a motion seeking certain relief from this Court pursuant to her work as Receiver of the Property. (Dkt. #58). The New York Supreme Court had previously appointed Feifer as Receiver on January 3, 2022. (*Id.* at 1). Through her motion, Receiver seeks this Court's approval of retention and compensation for attorneys, property managers, leasing agents, and other professionals in conjunction with Receiver's obligations under the order appointing her. (*Id.*). On September 2, 2022, the parties submitted a joint letter in response to Receiver's motion. (Dkt. #67). Plaintiff explained that it consented to the relief sought by Receiver. (*Id.* at 1). Defendants, however, argued that the Court should deny Receiver's motion, or at a minimum substantially modify certain of Receiver's requests. (*Id.* at 1-3). Receiver filed a reply brief on September 6, 2022, contesting certain representations made by Defendants in their letter and reiterating her request for authority to retain and compensate the relevant professionals. (Dkt. #68).

## DISCUSSION

Before proceeding with its analysis, the Court pauses to observe that there are three pending motions in this case, and the parties have expressed no views as to the sequence in which the Court should consider those motions. Given Debtor's bankruptcy, there are also potential questions about the applicability of the automatic stay, although no party has suggested that this case is currently subject to such a stay. Because Plaintiff's motion to amend and to remand concerns jurisdictional issues, and because consideration of a motion to remand would not constitute a "continuation" of an action for purposes of the automatic stay, the Court first considers the motion to amend and to remand. *See Worldview Entm't Holdings Inc.* v. *Woodrow*, 611 B.R. 10, 15 (S.D.N.Y. 2019) ("[A]any actions by this Court to exercise its power of remand or abstention do not fall within the scope of the [automatic] stay because those actions do not constitute a 'continuation' of the action but would simply 'restore[ ] the action to the status quo as it existed upon commencement of the bankruptcy case prior to removal.'" (quoting *In re Cashco, Inc.*, 599 B.R. 138, 147 (Bankr. D.N.M. 2019))); *LaFlair* v. *Johnson & Johnson*, No. 18 Civ. 1270 (BKS) (CFH), 2019 WL 3454050, at *5 (N.D.N.Y. July 31, 2019) (holding that automatic stay did not prevent court from considering whether to remand due to lack of subject matter jurisdiction); *Turner* v. *Borobio*, No. 01 Civ. 7458 (SAS), 2001 WL 1602965, at *3 (S.D.N.Y. Dec. 13, 2001) (remanding and noting that issue of whether automatic stay applies should be addressed by state court); *Doe* v. *Archdiocese of New Orleans Indem., Inc.*, No. 20 Civ. 1338 (CJB),

12

2020 WL 4593443, at *3 (E.D. La. Aug. 11, 2020) (noting that "weight of authority holds" that district court "has the power to decide a motion to remand while the bankruptcy automatic stay is in effect").  Likewise, because the New York Supreme Court would be in a better position to consider Debtor's motion to intervene and Receiver's motion in the context of the broader management of this case were this Court to grant Plaintiff's motion to remand, it is in the interest of judicial efficiency to consider that motion first.  *See, e.g.,* *Little Rest Twelve, Inc.* v. *Visan*, 458 B.R. 44, 61 (S.D.N.Y. 2011); *Childs* v. *Valente*, No. 07 Civ. 18 (JGM), 2007 WL 805820, at *1 (D. Vt. Mar. 15, 2007).

## A.    The Court Grants Plaintiff's Motion to Amend the Complaint and to Remand to State Court

### 1.    The Court Grants Plaintiff Leave to Amend the Complaint to Replace Plaintiff with Lender

Plaintiff is granted leave to amend the Complaint to substitute Lender as the proper plaintiff in this action.  Under Federal Rule of Civil Procedure 15, the Court is instructed to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  That standard is easily met here: Lender is the current holder of the Mortgage Loan Documents and thus the real party in interest.  Defendants do not oppose Plaintiff's motion to amend the Complaint (*see* Def. Opp. 14), and accordingly Plaintiff's motion to amend is granted and the Complaint will be supplanted with the First Amended Complaint (Weiss Aff., Ex. G).

###### 2.     The Court Orders This Case Remanded to State Court

###### a.     Applicable Law

The more contested issue concerns the ramifications of that amendment. Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."  28 U.S.C § 1332(a).  "Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction."  *Citibank, N.A.* v. *Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)).  It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties — that is, when all plaintiffs are citizens of different states from all defendants.  *See* 28 U.S.C. § 1332; *Lincoln Property Co.* v. *Roche*, 546 U.S. 81, 88 (2005); *Advani Enters., Inc.* v. *Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).[3]  In other words, if any plaintiff shares state citizenship with any defendant, complete diversity does not exist and the court lacks subject matter jurisdiction.

For cases removed to federal court from state court, diversity jurisdiction is determined at the time of removal.  *See, e.g.*, *Grupo Dataflux* v. *Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004); *Hallingby* v. *Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009); *United Food & Com. Workers Union, Loc. 919, AFL-CIO* v.

---

[3]     The dispensability *vel non* of a party to a litigation is discussed further *infra*.

*CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *Cotto* v. *Fed. Nat'l Mortgage Assoc.*, No. 20 Civ. 6487 (MKV), 2021 WL 4340668, at *2 (S.D.N.Y. Sept. 22, 2021) ("Where removal is based on diversity jurisdiction, there must be complete diversity both at the time of removal and at the time the state court complaint was filed."); *see also Altissima Ltd.* v. *One Niagara LLC*, No. 08 Civ. 756S(M), 2010 WL 3504798, at *4 (W.D.N.Y. Sept. 2, 2010) ("The determination of whether a party is dispensable or not must be made with reference to the claims before the Court at the time the jurisdictional issue is raised — *i.e.*, the case presented in the operative pleading, here the [a]mended [c]omplaint."); *Cabrini Dev't Council* v. *LCA-Vision, Inc.*, 197 F.R.D. 90, 93-95 (S.D.N.Y. 2000) (looking to amended complaint to determine indispensability, and then remanding action for lack of diversity jurisdiction, which also was absent at time of removal), *vacated in part on other grounds sub nom. Excimer Assocs.* v. *LCA Vision, Inc.*, 292 F.3d 134, 139-40 (2d Cir. 2002); *cf.* 14A CHARLES A. WRIGHT & ALAN R. MILLER, FEDERAL PRACTICE & PROCEDURE (4th ed.) § 3702.4 ("[T]he existence or nonexistence of the amount in controversy required for subject matter jurisdiction purposes is determined on the basis of the facts and circumstances as of the time that an action is commenced in a federal court or arrives there from a state court by way of removal.").[4]

---

[4]     Defendants cite a number of cases finding that diversity of citizenship is determined at the time of filing.  (*See* Def. Br. 7-8).  That is true for cases originally filed in federal court; for cases originally filed in state court, the relevant inquiry is the time of removal.

Federal law provides that

> [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).  As such, "any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union*, 30 F.3d at 301 (quoting *Manway Constr. Co.* v. *Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (internal quotation marks omitted)).

"When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00 Civ. 1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp.* v. *Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (internal quotation marks omitted)).  Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo* v. *Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100, 108 (1941)); *accord Somlyo* v. *J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991); *Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2006).

Practical considerations buttress this presumption against removability, as it would "ill behoove us to retain the action if there is the slightest doubt as to our power to entertain it, and then face the possibility of jurisdictional dismissal by a higher court after the litigation had been fully concluded." *Am. Mut. Liab. Ins. Co.* v. *Flintkote Co.*, 565 F. Supp. 843, 850 (S.D.N.Y. 1983).

Courts must sometimes look beyond the caption in conducting the diversity analysis. "[A] necessary or indispensable party to a lawsuit, even where no specific cause of action is asserted against it, should be considered for diversity of jurisdiction purposes if it is a real party to the controversy." *Audi of Smithtown, Inc.* v. *Volkswagen of Am., Inc.*, No. 08 Civ. 1773 (JFB) (AKT), 2009 WL 385541, at *4 (E.D.N.Y. Feb. 11, 2009) (citing *Calcote* v. *Texas Pac. Coal & Oil Co.*, 157 F.2d 216, 218 (5th Cir. 1946) ("In diversity cases, the question of indispensable parties is inherent in the issue of federal jurisdiction[.]")).[5] "A plaintiff, however, may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants non-diverse parties with no real connection with the controversy" — a practice known as "fraudulent joinder." *Recovery Racing III, LLC* v. *Maserati N. Am., Inc.*, No. 17 Civ. 1028 (JMA) (SIL), 2017 WL 11515232, at *2 (E.D.N.Y. Sept. 27, 2017) (quoting *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)) (internal quotation marks and alterations omitted).

---

[5]     The Court notes that because issues associated with federal court jurisdiction and remand often arise in the context of the joinder of defendants by plaintiffs, the overwhelming weight of the caselaw in this area discusses the joinder of defendants. The principles guiding the analysis of the joinder of plaintiffs are the same.

Fraudulent joinder can be established in one of two ways: (i) by showing fraud in the plaintiff's pleadings or (ii) by demonstrating "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. The burden of proving fraudulent joinder rests with the removing party and is "heavy," as it must be demonstrated by clear and convincing evidence. *Bounds* v. *Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting *Briarpatch Ltd., L.P.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)). "[T]he absence of a formal cause of action against a defendant, by itself, does not establish fraudulent joinder." *Recovery Racing III*, 2017 WL 11515232, at *2. Likewise, mere discrepancies or mistakes do not demonstrate fraud in the pleadings. *See, e.g.*, *Rosenfeld* v. *Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017) (finding removing party did not prove fraud in the pleadings despite plaintiff's deposition testimony contradicting allegations in complaint); *Gerbo* v. *Kmart Corp.*, No. 14 Civ. 4866 (MKB) (LB), 2015 WL 6691603, at *2 (E.D.N.Y. Nov. 3, 2015) ("A defendant must establish by clear and convincing evidence that a plaintiff's pleadings contain some false set of facts in order to prove fraud in the pleadings.").

Because fraudulent joinder concerns the unnecessary addition of parties with no real connection to the case, the party opposing remand on the grounds of fraudulent joinder must often prove that the non-diverse party is not "a necessary or indispensable party to [the] lawsuit." *Audi of Smithtown, Inc.*, 2009 WL 385541, at *4. "[T]he jurisdictional analysis for removal occurs at the

time of removal based upon the necessity of the party under state law." *Id.* at 5

n.2.  Under New York law, "[p]ersons who ... might be inequitably affected by a

judgment in the action" are considered necessary parties.  N.Y. C.P.L.R.

§ 1001(a); *see also Audi of Smithtown, Inc.*, 2009 WL 385541, at *5 n.2

("[W]here the issue is fraudulent joinder, the Court looks to state law in order

to determine the nature of [the non-diverse defendant's] interest in this

litigation."); *Briarpatch Ltd., L.P.*, 373 F.3d at 302 ("Under the doctrine [of

fraudulent joinder], courts overlook the presence of a non-diverse defendant if

from the pleadings there is no possibility that the claims against that defendant

could be asserted in state court.").

### b.    Analysis

The facts of this case compel the Court to remand the matter back to

state court for lack of subject matter jurisdiction, given its grant of Plaintiff's

unopposed application to amend the Complaint to substitute Lender — a non-

diverse, New York citizen — as the plaintiff in this action.[6]

### i.    Defendants Fail to Demonstrate Fraudulent Joinder

Before proceeding to the issue of whether Lender was an indispensable,

non-diverse party at the time this case was removed to this Court, the Court

addresses the parties' disagreement over fraudulent joinder.  Defendants note

that in the initial Complaint, Plaintiff stated that it had an office in New York,

---

[6]    For purposes of diversity jurisdiction, an LLC has the citizenship of each of its
members.  *See Handelsman* v. *Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir.
2000).

which if true would have made the original parties non-diverse.  (Def. Opp. 5, 10 ("Plaintiff made a material misrepresentation regarding jurisdiction in the Complaint....  Any party weighing removal was entirely unable to ascertain from the Complaint that the Plaintiff was not a citizen of New York given that Plaintiff alleged, falsely, that it was.")).  This qualifies as fraudulent joinder, Defendants argue, because "[f]raudulent joinder exists where there [is] 'actual fraud in the pleading of jurisdictional facts[.]'" (*Id.* at 10 (quoting *Smallwood* v. *Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004))).  Significantly, however, Defendants do not suggest that Plaintiff's assignment of the Mortgage Loan Documents to Lender — which occurred months after the case was filed in state court and months prior to its removal — is fraudulent, even as they assert that "the assignment … is evidence of a fraudulent joinder of parties." (Def. Opp. 10).  In other words, while Defendants raise the specter of impropriety of the assignment by noting that Lender and Plaintiff are closely related entities, that Thaler and Griffin made small investments in Holdco via their subscription agreements,[7] and that there was no consideration paid for the assignment, Defendants marshal these points in support of their argument pertaining to the indispensability of Lender.  (*Id.* at 14).  Plaintiff retorts that Defendants have not come close to meeting the high standards for demonstrating fraudulent joinder.  (Pl. Reply 1-3).  Ultimately, the Court agrees.

---

[7]    Although these investments may be small in terms of the overall value of Holdco, Thaler and Griffin's subscription amounts still represent significant investments in absolute terms.

As an initial matter, the Court finds that Plaintiff's misrepresentation regarding its New York office does not rise to the level of a "fraudulent" statement regarding citizenship. The Complaint does not state that Plaintiff is a citizen of New York; instead, it states that "Plaintiff is a company incorporated in the Cayman Islands with limited liability, with an office located at One Bryant Park, 38th Floor, New York, New York 10036." (Compl. ¶ 2).[8] Setting aside Plaintiff's apparent justification for stating in the Complaint that Plaintiff has a New York office — that "Plaintiff acts through its asset manager, Marathon Asset Management LP, which does maintain a New York office" (Pl. Reply 2) — Plaintiff did not state that its principal place of business is New York. As the parties are aware, for purposes of diversity jurisdiction, a

---

[8]     Although no party has raised this issue, the Court harbors serious concerns regarding this case's removability in the first instance. 28 U.S.C. § 1446(b)(1) explains that

> [t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Defendants, in their notice of removal, recite that removal here was proper under 28 U.S.C. § 1446(b)(3), which states:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The Court is not convinced that this case was timely removed. Although the standard for removability "does not require a defendant to look beyond the initial pleading for facts giving rise to removability[,]" it does "require[] a defendant to apply a reasonable amount of intelligence in ascertaining removability[.]" *Whitaker* v. *Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001). Regardless of the issue associated with listing a New York office, the Complaint states that Plaintiff is incorporated in the Cayman Islands and does not state that the New York office is its principal place of business.

corporation is a citizen of both its state of incorporation and principal place of business.  *See, e.g.*, *Sumner* v. *Marriott Int'l, Inc.*, No. 21 Civ. 6711 (PKC), 2021 WL 3542805, at *1 (S.D.N.Y. Aug. 11, 2021).  Although Plaintiff's statement may have been inartful, without more this Court is not prepared to deem it "outright fraud[,]" particularly in light of the fact that Plaintiff made no representations regarding its principal place of business.

Further, mere fraud in the pleadings would not suffice.  Rather, the fraud must be committed in order to "bring the resident defendant into state court."  *Pacheco de Perez* v. *AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (internal citation omitted).  The putative fraud regarding Plaintiff's New York office has no relationship to Plaintiff's desire to substitute Lender in this action. (*See* Def. Opp. 9-10 (discussing Plaintiff's original representation that it has a New York office as the relevant fraudulent joinder)).  The alleged misrepresentation was not related to "joinder," nor was it done in an attempt to force Defendants back into state court.  *See, e.g.*, *Pampillonia*, 138 F.3d at 460-61 ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy.").  Yet, the Court *today* is considering Lender's substitution in this case, and whether that substitution divests it of subject matter jurisdiction.  Thus, it is unclear to the Court why any fraudulent joinder argument would be directed to the original representations by Plaintiff in its Complaint, rather than to Plaintiff's current desire to amend and replace itself with Lender.

In any event, the Court is unconvinced by Defendants' proffered support for its argument that the Court can simply ignore Plaintiff's subsequent assignment of the Mortgage Loan Documents to Lender on the basis of a purported fraudulent joinder months earlier.  (Def. Opp. 9-10).  For example, in *Linardos* v. *Fortuna*, 157 F.3d 945 (2d Cir. 1998), the plaintiff commenced his action in federal court, and complete diversity of citizenship existed at the time of filing despite the plaintiff's subsequent move to Connecticut — where the defendants were also citizens.  *Id.* at 947.  The Second Circuit found that the plaintiff's subsequent move did not deprive the federal court of subject matter jurisdiction because

> [i]t is hornbook law that the question of [w]hether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced.... If diversity exists at the time of commencement, federal jurisdiction is not defeated if one party subsequently becomes a citizen of the same state as his opponent.

*Id.* (internal citations and quotation marks omitted).  The case has nothing to do with fraudulent joinder, but simply reiterates black-letter jurisdictional law.  And unlike in *Fortuna*, this case was not commenced in this Court; it was commenced in New York Supreme Court.  Defendants have simply failed to argue — nor could they, under this Court's understanding of the facts — that the assignment to Lender constitutes a fraudulent joinder.

Another case on which Defendants rely, *Smallwood* v. *Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), is similarly inapposite.  That case concerned a fraudulent joinder argument going to the *second* manner of

proving removability based on fraudulent joinder — "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant[.]"  *Id.* at 573.  In that case, the Fifth Circuit found that the district court wrongly denied the plaintiff's motion for remand due to lack of subject matter jurisdiction, because it erroneously transmuted plaintiff's likely inability to recover against the in-state defendant because of preemption into an improper joinder of the in-state defendant.  *Id.* at 574.  Defendants do not raise that ground for joinder in this case.  In short, Defendants have not pointed the Court to a single case suggesting that the Court is free to overlook diversity of citizenship issues that existed prior to the removal of this case because of an imprecise statement in the Complaint.  (*See* Def. Opp. 10 ("Plaintiff's fraud was not uncovered until after its assignment, but before any motion to substitute a party plaintiff, to amend the caption, or to file an amended complaint.  As such, this Court should disregard the assignment and assess diversity as of the filing of the Complaint.")).  Thus, even if Defendants could prove that there was outright fraud in Plaintiff's pleadings, which they cannot, it would not be determinative of the amendment and remand motion at hand.

> ### ii.       Lender Was an Indispensable Party at the Time of Removal and Today

The Court next considers whether Lender is an indispensable party to this action — the dispositive inquiry on this motion to remand.  Indeed, as the parties are aware, the Court previously advised the parties that what concerned it was "whether this case must be remanded because [Lender] was

an indispensable party at the time the case was removed to federal court."

(Dkt. #47).  In so instructing the parties, the Court cited *Freeport-McMoRan, Inc.* v. *K N Energy, Inc.*, 498 U.S. 426, which holds that a federal court retains subject matter jurisdiction over an action despite a substitution of a non-diverse party where the substituted party was not an indispensable party "at the time that federal proceedings commenced."  *Id.* at 428.[9]  Myriad courts have found an exception to *Freeport*'s rule in the converse of its facts, *i.e.*, that

---

[9]    The Court notes that several courts have found that *Freeport* is limited to motions made pursuant to Federal Rule of Civil Procedure 25, which pertains to substitution of parties rather than amendment of pleadings.  *See, e.g.*, *NRI 3, LLC* v. *Lantana Ins., Ltd.*, No. 10 Civ. 22322 (AJJ), 2010 WL 11553682, at *4 (S.D. Fla. Dec. 17, 2010) (collecting cases).  In this Court's view, Plaintiff's motion is akin to a Rule 25 motion, although "Rule 15(a) may be used to substitute new plaintiffs."  *Staggers* v. *Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir. 1966); *see also Estate of A. A.* v. *United States*, No. 15 Civ. 1479 (JCH), 2016 WL 7471634, at *10 (D. Conn. Dec. 28, 2016) ("Like Rule 25, Rule 15 may be used to substitute a new party."); *Unterberg* v. *ExxonMobil Oil Corp.*, No. 14 Civ. 10025 (GBD), 2018 WL 6332899, at *2 (S.D.N.Y. Nov. 7, 2018) (same).  Defendants explicitly did not oppose Plaintiff's motion to amend pursuant to Rule 15 to substitute Lender as a non-diverse plaintiff in this action.  (Def. Opp. 14-15 ("[W]hile Defendants have not opposed Plaintiff's motion to amend, Plaintiff's motion to remand following such amendment should be denied on the ground of fraudulent joinder, and also on the ground that [Lender] was not an indispensable party on the date of removal, and this Court's diversity jurisdiction is unaffected by substitution of a new party plaintiff after removal.")).

Were the Court to treat Plaintiff's amendment pursuant to Rule 15 as akin to a Rule 19 joinder post-removal, the Court would not consider the indispensability of Lender to this action, but instead would consider whether joinder was appropriate under Rule 20 and 28 U.S.C. § 1447(e).  *See, e.g.*, *Briarpatch Ltd. L.P.* v. *Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 327 (S.D.N.Y. 2001).  Because the Court does not perceive that Plaintiff's substitution of Lender is done to manipulate subject matter jurisdiction — indeed, Plaintiff has explained in detail the reasons that it assigned the Mortgage Loan Documents — it would still remand this case under Section 1447(e).  *See, e.g.*, *Coniglio* v. *Andersons, Inc.*, No. 03 Civ. 153 (LGF), 2004 WL 1228393, at *4 (W.D.N.Y. June 3, 2004) ("[A]bsent a showing that a plaintiff seeks to amend a complaint to add a non-diverse defendant solely to effectuate a remand from federal court to state court by destroying diversity, the amendment may be permitted even though diversity jurisdiction is thereby destroyed."); *Moncion* v. *Infra-Metals Corp.*, No. 01 Civ. 11389 (RLE), 2002 WL 31834442, at *2 (S.D.N.Y. Dec. 18, 2002); *Graves* v. *Home Depot U.S.A., Inc.*, No. 12 Civ. 3816 (LGS) (DF), 2013 WL 2357205, at *5 (S.D.N.Y. May 24, 2013) ("[W]here there is no evidence that the proposed joinder would be fraudulent or improper, the mere desire of a plaintiff to litigate in state court is insufficient to warrant denial of the plaintiff's motion.").

"diversity jurisdiction will be destroyed if it is determined that the later-joined, non-diverse party was indispensable to the action at the time it commenced." *Salt Lake Tribune Publ'g Co.* v. *AT&T Corp.*, 320 F.3d 1081, 1096 (10th Cir. 2003); *Nat'l Westminster Bank, PLC* v. *Grant Prideco, Inc.*, 343 F. Supp. 2d 256, 259 n.12 (S.D.N.Y. 2004) (collecting cases); *Binswanger of Pennsylvania, Inc.* v. *Spencer's, Inc.*, No. 99 Civ. 2424 (NLS), 2000 WL 4141, at *1 (E.D. Pa. Jan. 4, 2000) (allowing plaintiff to amend its complaint to add non-diverse plaintiff and then remanding case because added plaintiff was indispensable); *Chism* v. *Burlington N. R.R. Co.*, No. 95 Civ. 351 (NBB), 1996 WL 408907, at *1 (N.D. Miss. July 1, 1996) ("[J]oinder of a non-diverse party, who is indispensable at the commencement of the action, divests a federal court of diversity jurisdiction.").

Lender became an indispensable party to this action when Plaintiff assigned Lender its interest in the Mortgage Loan Documents months prior to the removal of the action to this Court.  Accordingly, now that the Court has approved the substitution of Lender as the plaintiff in this action, remand is required due to lack of subject matter jurisdiction.  Defendants protest that Lender was not (and is not) an indispensable party to this case for two principal reasons: (i) because Plaintiff asserted that it was holder of the relevant notes at the time it moved for summary judgment in New York Supreme Court; and (ii) based on indicia of a close corporate relationship between Plaintiff and Lender.  (Def. Opp. 12-14).  Responding to the first argument, Plaintiff cites the assignment documents (Thaler Aff., Ex. B) as proof

that "[o]n November 18, 2021, Plaintiff assigned the Mortgage Loans and all of the Mortgage Loan Documents to Lender" (Pl. Supp. Br. 1), directly contradicting Defendants' contention.  As to the second argument, Plaintiff responds that "the fact that Lender is an affiliate of Plaintiff does not render Lender a dispensable party."  (Pl. Reply at 3).

The Court begins with the parties' dispute regarding assignment of the notes.  The factual record before the Court indicates that all of the Mortgage Loan Documents, including the notes, were assigned to Lender on November 18, 2021, prior to the state court summary judgment briefing. Having reviewed the assignment, the Court observes that all of the relevant interests and notes related to this foreclosure action appear to have been assigned to Lender at that time.  (Thaler Aff., Ex. B).  Although Plaintiff's submission in state court prior to removal of this case states that "Plaintiff was, and still is, in physical possession of the Notes" (Def. Opp., Ex. B ¶ 28), the record before the Court makes clear that Lender was assigned all of the Mortgage Loan Documents in conjunction with the November 18, 2021 assignment, which occurred months prior to removal (Pl. Reply 3-4; Thaler Aff. ¶ 6; *id.*, Ex. B).  Indeed, the Court understands that Plaintiff's attempt to substitute Lender as the plaintiff during the state court component of this action (*see, e.g.*, Def. Opp., Ex. C at 15-16) was precipitated by the November 2021 assignment.

In any event, as the Court noted, doubts about the propriety of removal based on concerns related to subject matter jurisdiction are to be resolved

27

against removal.  *See, e.g.*, *Fed. Ins. Co.*, 422 F. Supp. 2d at 367-68 (surveying cases).  This is because removal jurisdiction "implicates significant federalism concerns[,]" and because "suspect removal … conserves judicial resources" in the event that a case must be dismissed for want of jurisdiction at a later point. *Id.* at 367-68 (internal quotation marks and citations omitted).  As such, "the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof."  *Id.* at 368 (internal quotation marks and citations omitted).  As Plaintiff notes, the parties do not dispute that "only the holder of the mortgage note has standing to foreclose."  (Pl. Reply 4 (citing *Aurora Loan Servs., LLC* v. *Taylor*, 25 N.Y.3d 355, 362 (2015))).  Because this point of law is not in contention, and because the only "competent proof" in this case demonstrates that Lender held all of the Mortgage Loan Documents at and for several months prior to the time of removal, the Court concludes that Lender was an indispensable party when this case was removed.  Indeed, in the absence of Lender to this action, Plaintiff's sought-after relief — foreclosure — would be impossible, and this fact was equally true prior to the time of removal.[10]

---

[10]   Defendants also suggest, without caselaw support, that Plaintiff's use of different terms to refer to itself and Lender in state court and the fact that Plaintiff continued prosecuting the action in state court bears on the indispensability determination.  (Def. Opp. 11-12).  The Court is not persuaded.  After all, Plaintiff was the plaintiff in the state court action prior to the assignment, and accordingly would have been required to prosecute the action prior to substituting Lender.  What is more, as indicated by the proceedings in state court, Plaintiff attempted to substitute Lender on multiple occasions prior to motion practice in state court and prior to removal.  (Weiss Aff. ¶¶ 14-15).

Defendants' second argument regarding indispensability, concerning Lender's relationship to Plaintiff, fares no better.  Once again, Defendants cite no authority to contend that features of the assignment somehow render Lender a dispensable party to this action.  (Def. Opp. 13-14).  The Court has received multiple sworn affidavits from Plaintiff related to the assignment and the reasons it was done, and has reviewed the assignment itself.  More fundamentally, the parties agree that Lender is the only entity that can effectuate foreclosure, and do not dispute that this fact is dispositive of indispensability here, despite disagreeing over factual issues.

In sum, because Lender was an indispensable party to this action when it was removed, remand is required for lack of subject matter jurisdiction.  As noted above, the Supreme Court has held that in some instances, changes to the parties following a case's filing would not impact subject matter jurisdiction.  *See Freeport*, 498 U.S. at 429.  But the facts of this case are a far cry from those of *Freeport*, and are more analogous to cases where addition of parties — particularly indispensable parties — has been found to impact the subject matter jurisdiction analysis.  To review, *Freeport* involved the addition of a dispensable plaintiff based on a mid-litigation transfer of interest under Rule 25(c).  *Id.* at 427.  The case below was brought initially in federal court and the Supreme Court determined that transfers of interest during litigation and subsequent motion pursuant to Rule 25(c) did not defeat diversity jurisdiction, even though the newly-added party was non-diverse, because the

time of filing in federal court was the relevant moment for determining subject matter jurisdiction.  *Id.* at 428.

This case is fundamentally different than *Freeport* for multiple reasons. *First*, *Freeport* itself noted that the outcome would be different if the newly-added party had been "indispensable" at the relevant time (if brought originally in federal court, the time of filing; if brought initially in state court, the time of removal).  *Freeport*, 498 U.S. at 428; *see also Cobb*, 186 F.3d at 679 ("The [*Freeport*] Court limited its holding to dispensable parties, noting that if the party that was added had been indispensable when suit was filed, the addition of the non-diverse party would have defeated diversity jurisdiction.").  *Second*, the Court was concerned that a contrary rule "could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation."  *Freeport*, 498 U.S. at 428.

Neither of those concerns is relevant here.  Lender is an indispensable party, and was one at the relevant time.  This case is thus analogous to *Price* v. *Marsh USA, Inc.*, No. 03 Civ. 292 (JGM), 2007 WL 294082 (D. Vt. Jan. 25, 2007).  In *Price*, the court granted leave to amend the complaint pursuant to Rule 15 to add an indispensable plaintiff.  *Id.* at 2-3.  It then remanded the case to state court on the basis of lack of diversity.  *Id.* at 4-5.  In assessing *Freeport*'s applicability to the situation, the court noted that the amendment had been made pursuant to Rule 15, not Rule 25; that the newly-added party "has had an interest in the claims at issue well before [the plaintiff] even filed suit"; and that a number of other courts had concluded that "the *Freeport-*

30

*McMoRan* rule is that 'diversity jurisdiction will be destroyed if it is determined that the later-joined, non-diverse party was indispensable to the action at the time it commenced.'" *Id.* at 4 (collecting cases).  Further, the concern about business transactions during the pendency of litigation is not implicated by the facts of the instant case: the assignment occurred before removal, at the very early stages of litigation.

Lender's interest was created well before removal; it is indispensable party and was at the time this action came to a federal forum; and Defendants have not opposed its substitution via a Rule 15 motion.  Remand is thus consistent with precedent, and this non-diverse set of parties must proceed in state court.

## CONCLUSION

For the reasons discussed in this Opinion, Plaintiff's motion to amend and for remand is GRANTED.  The Clerk of Court is directed to REMAND this case to the New York State Supreme Court, New York County.  Debtor's motion to intervene (Dkt. #63)[11] and the Receiver's motion to compel (Dkt. #58) are DENIED without prejudice as to their renewal in state court.

---

[11]   Because the Court grants Plaintiff's motion to remand for lack of subject matter jurisdiction, it does not reach the merits of Debtor's motion to intervene.  That said, the Court notes that it is unaware of similar motions to intervene brought by a debtor in a case concerning a non-debtor.  Indeed, because the stay provision, 11 U.S.C. § 362(a), "only provides protection for the debtor[,] except under extraordinary circumstances[,]" *In re Sharma*, No. 12-14472 (SCC), 2014 WL 5714494, at *11 (Bankr. S.D.N.Y. Nov. 4, 2014), courts routinely find automatic stay provisions inapplicable even in cases where the defendant is a debtor's wholly-owned subsidiary, *see, e.g.*, *Chord Assocs. LLC* v. *Protech 2003-D, LLC*, No. 07 Civ. 5138 (JFB) (AKT), 2010 WL 1257874, at *8 (E.D.N.Y. Mar. 25, 2010) ("[A] bankruptcy filing by a parent does not automatically stay actions against a wholly owned subsidiary."); *Pavers & Rd. Builders Dist. Council Welfare Fund* v. *Core Contracting of N.Y., LLC*, 536 B.R. 48, 53 (E.D.N.Y. 2015) ("*Pavers & Road Builders*") (holding that the automatic stay "has no application" where there is no basis

SO ORDERED.

Dated:     February 7, 2023
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

on which the court could determine "that pursuit of the claims against the non-debtors would have either an immediate or an adverse effect on the debtor").

As the court explained in *Pavers & Road Builders*, a debtor can take certain steps to enjoin actions against third-parties where "unusual circumstances arise[,]" including seeking an anti-suit injunction from the bankruptcy court or seeking, through confirmation of a plan of reorganization, a provision that prevents litigation against non-debtor parties.  536 B.R. at 51-52 (internal quotation marks and citation omitted). To the Court's knowledge, Debtor has done neither here.  As the *Pavers & Road Builders* court succinctly stated, "[i]f in [resolving the instant case against a non-debtor], it would prejudice other creditors of the debtor in a way that the [b]ankruptcy [c]ourt would consider unfair, it is for the [b]ankruptcy [c]ourt, upon motion of the debtor, to tell me so."  *Id.* at 53.

Likewise, though this Court is not resolving Debtor's Rule 24 motion, it has serious doubts that intervention would be warranted in a case against non-debtors.  Indeed, Debtor has not cited authority suggesting that its *potential* ability to access certain bankruptcy protections would meet the Rule 24(a)(2) standards requiring a "direct, substantial, and legally protectable" interest, *Brennan* v. *N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (internal citation omitted), or that the non-debtors here would not be able to sufficiently represent Debtor's interests, *Butler, Fitzgerald & Potter* v. *Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citations omitted).  Ultimately, it falls to the state court to make final determinations as these motions.